Thank you. I'd like to reserve five minutes for rebuttal. That's fine. Watch your own time, please. Okay. Thank you very much, Your Honor. Very briefly, Your Honor, the – You're Harold – I'm Harold Himes. Good morning, Your Honors. Okay. Very briefly, Allstate and Celanese apparently have gone by the same playbook. They present no or very few facts. Basically, it's the Emperor's New Clothes. And very little disclosure. And then say grand summary judgment because there aren't enough facts in order to either have claims for bad faith or for responsibility. I think there's one gaping hole in this record, which is the policy. The who? Policy. The policy? Policy. The policy that we're talking about with regard to Allstate. We don't have it. Well, I'm surprised that the policy was not enclosed, but the fact of the matter is there's no denial that there was such a policy by Allstate. I understand that, but how can we judge whether it was bad faith in denying the claim if we can't even see what the language of the policy is? Well, I believe that it was indicated that the claim and everything that went around it was whether or not there was an emergency or a sudden dispersal of water or whatever. I understand that, but ordinarily in an insurance case, what you're comparing is the facts to the policy. We don't have the policy. Sorry that the policy wasn't enclosed. Apparently, we had we got a few pages of the policy initially that was not included, that was yellow marked, where the agent indicated that there was no... It may not be your problem because you didn't move for summary judgment, but we don't have the policy. I don't believe that the absence of the policy in itself, when there's no statement that there wasn't a policy, provides summary judgment. I understand the policy, but we don't know what it said. Well, we have no objection that the policy indicates, based from the testimony of Mr. O'Connell, that there was a sudden dispersal of water for all State to cover the claim and that there was no such thing presented. So in the letter of Mr. O'Connell, which is supported by the affidavit, by his deposition, and which has been enclosed, that specifically indicated that all State... And that's a bad faith, an appropriate bad faith claim? Yes. Without a policy? Well, we have evidence of the policy. And remember, in motions for summary judgment, not only do you need direct evidence, but you can use circumstantial evidence. And certainly we have circumstantial evidence, based on the testimony of the various witnesses, that, in fact, a policy existed and that the policy provided that if there was a sudden dispersal of water, that all State had to afford coverage. And the motion for summary judgment was only in punitive damages. Is that right? The motion for summary judgment was originally only in punitive damages. However, the Court granted it entirely. Right. And what's your position with regard to that? My position is that the Court exceeded its authority and should not have done it. But you just told us the record is adequate to make the determination of bad faith. I think the record is adequate to make a determination of bad faith without having the actual policy attached. But I do believe that the Court exceeded itself when it determined that there was no bad faith. Also ---- Well, let me ask you another question. Sorry. Go ahead. Okay. I was going to say, in my reading of your complaint, you don't challenge bad faith on a tort theory. Well, I believe that bad faith was indicated on product liability, and we also filed an amended complaint. Well, I read your complaint. Where do you challenge bad faith on a tort theory? My worry is that the only challenge to bad faith is on the contractual theory. But even if there is bad faith ---- We're talking about breach of the covenant of bad faith and fair dealing, aren't we? Correct. I'm sorry. If we have a breach of the covenant of bad faith and fair dealing, as I understand that covenant, I can't have any breach of the covenant of bad faith and fair dealing without breaching the contract. Correct. So if I don't have the contract here, you're saying that there's still enough here to suggest that we can tell what the evidence of the contract was from what's here? Yes, I do. All right. Let me go to one more. You suggest that the motion for summary judgment was broader than it ought to be. Did you move for reconsideration? No. Why? It seems to me that if you were going to suggest to the district court or to us that the motion for summary judgment was broader than what was in the record, that one would say that to the judge. Well, I don't believe that the attorney who originally argued this for the judge asked for the motion for reconsideration, but I didn't believe that a motion for reconsideration is a precedent to coming before this Court. Well, I understand that. I'm just trying to say, when I read the motion for summary judgment, it says that they're granting summary judgment. They want summary judgment on plaintiff's claims for negligence and punitive damages, as no genuine issues of fact exist as to these issues. That's right in the first. And the introduction and background says the plaintiff's claim that Allstate, that it had reasonably denied payment on the plaintiff's homeowner's claim and acted in bad faith. However, even after two years of litigation, they failed to produce any proof that Allstate was negligent or acted in bad faith. So it seems to me that at least the motion for summary judgment brings bad faith right into effect, right into something that would be, at least with the introduction of the motion and the introduction of background. And if you say there's enough there based on what they pled to the Court, I guess I'm trying to figure out how the Court couldn't have made the decision. Well, I don't know, because the Court didn't make specific findings. What would you? The Court didn't make findings. If the Court didn't make findings. If the Court didn't make findings. Excuse me. If we were to remand because the Court, on your theory that the Court exceeded its authority in summary judgment, is there any chance the record would look any different if there were a new summary judgment motion made specifically on the bad faith? I think the only thing that would happen is we would dot more of the i's and cross more of the t's. But the fact of the matter is there was – I mean, you don't have a per se denial of the claim, nor do you have an acceptance of the claim. You have a situation where a homeowner made a claim and where nothing was ever given to them because of the claim, and there's not even a statement of specific denial with respect to the claim. I thought there was an edge claim. Well, eventually it sort of like seems like it was, but there was nothing really that we have that really shows a per se denial of the claim. Are you telling me that there's really nothing – nothing that would be added to the record on a bad faith summary judgment by you? Is there anything that you would add to the record as to Allstate? What I would add to the record is obviously we would add the particular contact tract to the record and we would get the affidavit. But why is the contract any more or less relevant to the punitive damages or the bad faith issue? Well, I – I'm only saying this for the Court's benefit. In other words, I don't think that the Court needed this. I think that the Court should have refused summary judgment based on the facts that were presented by the appellant in this particular case. Well, if the Court didn't need it on punitive damages, it doesn't need it on bad faith, then why don't we just decide the bad faith at this point? In other words, I'm trying to understand what the remand is for. Well, the remand would be for the Court to make specific findings as to why it found that there was no evidence. What are the findings on summary judgment? There wouldn't be findings. Well, I believe that the Court could specifically make findings, and I think that often Excuse me, but you don't make findings on summary judgment. So there wouldn't be findings. The record – the question is whether the record would be any different or whether we can do a de novo because summary judgment is from review de novo anyway. Correct. Right. And I think that a remand, although that could be something the Court would do, I think that looking at it on a de novo basis, that the Court would also have – that this Court should also reverse specifically because of that. Well, the problem that Judge Brezon has, and I somewhat agree, is that the district court is not going to make findings of fact. And if you're suggesting that this record has all the facts that need to be in it based on reading affidavits, and all we have to do is apply the law, then there's no reason to remand at all. I believe that is correct, and I think that the Court can – should and could reverse. I think that a remand is a marshmallow in this case because we'll probably fill it in more, but it's the obligation of the person who's asking for summary judgment in order to produce the facts which would give the reason that there should not – that summary judgment should be granted. And we're saying that all State didn't do it. And on the other side, we have provided the facts which would create substantial questions of fact so that there would not be summary judgment granted. Why is that the product's liability issue? As far as the product's liability issue, we believe that we've done that as well. But what is the evidence that the Seleny – let's assume that there is adequate evidence that the fittings in the house were those of the defendant, Seleny's. What evidence is there that that material caused the problem? The evidence that the material caused the problem is shown by a series of cases, even in fact as far as the Amstead case, which held that there were problems being caused by Celcon and that – You mean you don't have to put evidence in your – in your record that the reason for the flood in your house was the Seleny's fittings? Well, we have the affidavit from Mr. Tang who said that the fitting itself had cracked and that he observed that. If you look on the number two, that will show you where he observed that specific identity that there was a problem. And it's the fittings of Seleny's or – I'm sorry, the fittings of U.S. Braff's made exclusively by Celcon, which created the situation in Tucson, Arizona, where you have lots of chlorine and high ambient temperatures for the fittings to break. And on that basis, we believe that it was – it was inappropriate for the Court to grant summary judgment in that case. And that, in fact, the facts on Seleny's, based on what the Attorney Nelson stated, was that this would be appropriate as well as by the various other studies that were done by Mr. Reber and the – and also by – by the plumber Everett. By the way, there is an interesting question here, just for an amusement to the Court. Francis is the person who wrote the affidavit. This is the only thing that Seleny's produces is this affidavit. Yet Frank is at the premises as a representative of Seleny's. I'm sure this is not Frank the plumber, but Frank from Seleny's is that the same person who is Francis. We don't know that. We have nothing produced. They have not produced anything with respect to that. And so therefore, what we have done is we produced sufficient questions, sufficient facts, so that there are questions of fact presented to the fact finder so that there should be a jury trial. Did you ever ask for any discovery? Well, in Arizona, we got disclosure. Well, I understand you have disclosure. But what disclosure that you have, did you ever ask for any discovery? I can't represent that, Your Honor. I wasn't doing that part of the case, and I don't remember, so I don't want to. There's plenty of Federal precedent that suggests one shouldn't grant summary judgment if one is in line to discover things that might be only in the hands of the opposite party, and they can't do anything about the summary judgment because they haven't got the stuff yet. But I didn't ever see that argued, pled, said, nothing. I have no information that that was provided and that we requested it, although I would hope that we would have and asked them. But they did not provide anything. And I think the fact that nothing was provided itself creates a question of fact. Why wasn't it provided? They have an obligation to provide this stuff. All right. We'll give you some time in rebuttal, but when you stand up, can you tell me where exactly in the record is the Tang information about the fittings being cracked? You don't need to do that now. When you stand up after the argument. Okay. Thank you. Thank you, counsel. Forsyth. Good morning, Your Honors. My name is Keith Forsyth, and I represent Appley Allstate Insurance Company. And by advance arrangement, Counsel for Selanese and my client have agreed to split the time in half so that I don't lose that. That's up to you to monitor. Thank you. I will do that, Your Honor. With respect, this district judge had the power to do what he did. He had the record to do what he did. And I would submit when this Court performs its de novo review, I would ask that this Court conduct its de novo review. Yeah. I think the question is whether the plaintiff was given sufficient notice that you were seeking summary judgment would also be sought on the ground that there was no showing of bad faith. Yes, Your Honor. That was not in your motion for some reason or other. You didn't put it in your motion. Judge Smith mentioned it may have been in a part of the motion referred to bad faith. And the plaintiff did respond to say that the showing of bad faith, I think, was sufficient. There was an indication of that in his response to papers. Yes, Your Honor. Did he have notice of it? That's the question. Yeah. In fairness to the Tangs, you know, no decision that didn't give them an opportunity to address the merits of their bad faith claim should be made as a surprise. But I don't think in viewing Arizona law or even in viewing the motion papers in this case that the Court could find anything up close to surprise. Under Arizona law, you don't get punitive damages unless you establish the tort. If there was any doubt in the bad faith context, there's a half a dozen punitive damages once you show the something more. But you must, as a – But the argument as made was only about the something more. Isn't that true? It's true, Your Honor. As Judge Smith pointed out, there are other references. I suppose responsibility wasn't to introduce the policy. You were moving for summary judgment, wasn't it? Your responsibility? It wasn't, Your Honor. If we read Celotex correctly, at least what Justice Rehnquist wrote, it's absolutely appropriate for a party like Allstate to raise the issue, to sort of use the pop culture, asking where's the beef for their case. The burden of production of proof, not just the burden of persuasion, but producing evidence, absolutely shifted to the plaintiffs who were speaking improperly. Okay. But it became – therefore, it mattered whether it was the bad faith claim or the punitive damages claim. No? Because as to punitive damages, your argument was they haven't proven any evil intent. And you may be able to litigate that issue without the contract. But you certainly can't indicate a contract – can't litigate a contract-based bad faith claim without the contract. If they didn't know that that's what they were doing, then why should they have introduced the policy, as opposed to saying, well, we have enough evidence of just general malice, which they probably don't. And they're not even claiming now that they do. But how do they know they were supposed to get to the nitty-gritty of the bad faith claim? First, I would submit under Arizona law, there's no other conclusion. It is absolutely fundamental to any punitive damages claim that you first establish material fact questions on bad faith. Every case says that, and in fact, their motion papers in their response recite the portion of Linthicum, the State law case. It would be if that's the way you framed it, but you didn't. No, we didn't, Your Honor. It's true. It's under Arizona law. I'm reading from your motion. Under Arizona law, even if the plaintiff has established a premonitory case of bad faith, the punitive damages burden of proof is not thereby satisfied. And that's where you joined issue. And you essentially assumed the bad faith and assumed the contract violation. Judge, I think you're fairly reading what was done before. It targeted punitive damages. It targeted the something more. But we cannot leave out two what I think are important points. First of all, it's clear now, if it wasn't clear from the record below, that these parties, the Tangs, have submitted all of the proof they have with regard to bad faith and the, quote, something more. The invitation to do the de novo review, the suggestion to you, Judge Berzon. Well, that may be true. So if we have to. But if I were looking at this before I walked in here today, I would. Fair enough. Well, it isn't clear, even before the comments that were made to the Court today, in the briefs, there is not one word, not one suggestion to this panel that there's proof they didn't get to put on. There is no suggestion by the Tangs that there's more they need to give the judge, that the district judge didn't have all the information he needed. But I would submit under Celatex the obligation to come forward with every bit of proof that was felt to be relevant, that created a material fact question, and that was done in a way that was admissible in evidence was on the Tangs. That's absolutely their burden, so that when the district judge views the record. What they were being asked to prove, that's the problem here. Right. But I still would submit, Judge Berzon, I appreciate your point that we were arguing specifically to something more. But you don't get there as a plaintiff in any case without establishing the underlying tort. So while our. You keep talking about tort. But I didn't see, I mean, I saw Celatex, I saw your client dismissed on the tort of the manufacturer, molding, marketing, and all of that. So then I don't think that's in front of us, really. But the thing that worried me was I didn't see anything in the allegations have any tort as to bad faith that was alleged by the plaintiff. It was all contraction. And, Your Honor, I can't specifically tell either, because the only allegation is a single paragraph in the amended complaint. In the typical case that this Court is used to seeing, there's a breach of contract claim, and there's a separate tort claim. Here we have a single paragraph which alleges the breach of the covenant of good faith and fair dealing. But that's implicit in every contract. But it also creates tort liability in the appropriate case. I don't know what they had in mind, but it looks like. It creates tort liability in Arizona in every case? Yeah. Because it doesn't create tort liability in Idaho in every case, just to pre, just to allege breach of the covenant of fair, good faith and fair dealing. It wouldn't, but. I mean, and I didn't find it in Arizona either. No, but the one, one point I wanted to make in fairness to the Tangs, there is the Dease v. State Farm case that's cited in the briefs that says in Arizona you don't have to have an antecedent breach of contract claim to proceed with a bad faith claim. You can have arguments that there's a tort, even if there's no coverage. But in this case. This allegation is called insurance bad faith, and it doesn't, it doesn't say that it's a breach of the covenant of good, of good faith and fair dealing. It just says they proceeded a bad faith, so you really can't figure out what they're saying. It's not clear, but it looks like the district court was looking at it as if it was a tort claim and then saying why there weren't any fact questions. On this record, I would submit in closing, because I want to give the balance of time to co-counsel. Number one, there is no way on this record that a punitive damages claim is something more component can ever be satisfied. And to the extent this Court will accept the invitation now from both parties to do its de novo review on this record, there is no way that the Court can find fact questions preclude summary judgment on bad faith. And I won't take it out of your opponent's time, but the one argument on bad faith that's made is that he is reading Ms. Lim, was that her name, as having essentially denied the claim by being unresponsive. Could that be a bad faith claim? No, it couldn't, Your Honor. And if it was characterized that way, it would be the first time that I know of, at least in reported Arizona decisions. If anything, the record in this case indicates to this Court that the insurance agent, who obviously has no claim responsibility, certainly wasn't an employee of the company, but more importantly, was in charge with the responsibility or had the duty to make a claims determination so that anything she did could be at admission and get past the hearsay rule and in any way viewed as a fact that's admissible to establish bad faith. At most, you have a remark by an insurance agent dealing with coverage, the presence  of a claim. And if you look at this record, Your Honor, you can't tell who made what decision and when with reference to what portion of the policy which isn't in the record, why it was too long, if it was too long. There isn't one component of the intentional delay or denial of insurance benefits at this point. They weren't litigating that.  Thank you very much. Thank you. Thank you. Thank you. Okay. Your colleague, go. Good morning. May it please the Court. My name is Paul O'Connor on behalf of Appellee Herc Selanese Corporation, now known as Selanese. As Your Honors are well aware, what we're here in front of is summary judgment, which was granted in favor of Selanese in the case. There's been some discussion of what happened in the case before summary judgment was granted, so I want to flesh that out a little bit. We moved for summary judgment about two years into the case. We started in state court. It was removed to federal court on diversity grounds. At the time we moved for summary judgment, we had made disclosures. We had made documents available for review and inspection by plaintiffs. There had been no objections to the disclosures that we made, no objections to the documents that we had made available for review and inspection. The Tangs obviously were in possession of whatever evidence there was as to what they are in their home. We also moved for summary judgment after one of the other defendants, another raw material supplier, Shell Oil Company, which made polybutylene, which was used in some of the piping used in this plastic plumbing, had been granted summary judgment basically on the same grounds that we then moved for summary judgment on, which was that there was no evidence that our material was either in the home or that if it was in the home, that it was in the particular component that failed in the home. That's the grounds that we moved on in addition to the legal ground under the raw material supplier defense, which I'll ultimately get to. But we moved for summary judgment. And, again, there were no objections made to our summary judgment motion being heard at the time. There were none of the typical issues coming up as can the motion be delayed pending some specific additional discovery. We want to take a deposition of somebody. There are some documents we don't have. We need to inspect further things. Kagan. So let's assume we have a perfectly good record. Will you please tell us about the record? Sure. What's in the record is no evidence. There's no evidence to support the proposition that whatever failed in the Tang's home was made of my client's material. And without that evidence, none of the claims can go forward. I think that the record is very clear and it's undisputed that what my client makes is a raw material that's used in some plastic fittings. Plastic fittings are made of a number of other materials. Delrin supplied by DuPont, polysulfone supplied by BASF. Metal fittings made by the metal obviously provided by numerous, from numerous sources. In addition, the products are made by a number of different manufacturers. And again, this is all in the record. Also in the record is the fact that the way these systems are put together is we supply raw material, others supply raw materials. There are numerous manufacturers of this plumbing system. Those manufacturers then ship these parts out to plumbing supply houses. I thought there was an actual physical, somebody looked at what are the actual pieces here and it had a cue on it and that was, then there's a declaration that that traces to your client. There is in the record no evidence concerning what allegedly failed. What there is in the record is there was an inspection of the property and during the inspection of the property, their inspector says that he saw some fittings with a cue on it. And from that, they then went, for reasons I don't understand, instead of testing the particular fitting at issue, even though it wasn't the fitting that anybody claims failed and so therefore wouldn't be evidence to keep my client in the case, nevertheless, even with that fitting, they didn't subject it to chemical testing to determine what the composition of it, what it was made from. Instead, what they did, and again, I don't know why they did this, they went out and got a lawyer from Texas who had handled some polybutylene cases in the mid-1990s and he submitted an affidavit which we objected to and continue to object to and don't think that it's proper evidence on a motion for summary judgment that purports to summarize what he thinks the evidence in polybutylene cases has shown and that he thinks that a company called U.S. Brass bought material from Celanese and that therefore, in his view, if there's a cue on the fitting. So why isn't that enough evidence to get by summary judgment? Well, that's not enough evidence to get by summary judgment. On that issue, only as to whether your product was in the house, not as to whether it failed. Well, first of all, the only evidence that they submitted that would indicate that a cue is made of my client's material is this affidavit from this lawyer in Texas, which again, I don't believe is admissible. I mean, summary judgment. Was it admitted? Did the district court rule that it wasn't admissible? No, but we objected to it and that issue can obviously be dealt with here. We preserved it below. We argued it again here and I think we've cited some case law for the proposition that a lawyer simply putting in his own views as to what he thinks the underlying under some underlying litigation has shown is not admissible evidence to overcome summary judgment. This could have all been dealt with very easily by the plaintiffs had they gone out and done chemical testing of the product and had some evidence as to what it is that failed. What about the next stage, i.e., whether if we assume that this demonstrates that there was your product in the house, he we're being told that there was some evidence from Mr. Tang himself that one of these fittings failed. Mr. Tang, there is some evidence from one of the Tangs, I'm not sure if it was Mr. Tang or Mrs. Tang, that what they think they saw behind a wall leaking in this plumbing system was a fitting. However, they were not able to identify the manufacturer of that fitting. There are no pictures that would identify the manufacturer of that fitting. There are no pictures that would even make it clear that it was, in fact, a fitting that was leaking. I mean, these are not experts. These are homeowners and I'm casting no aspersions. If I was looking at a plumbing system in my home, I might not know either. But there is no evidence that whatever it was that was leaking was my client's material. Do you want to briefly talk about the raw materials defense? Just briefly on the raw materials supplier defense, it's very clear under Arizona law that a manufacturer can be held liable, but a raw materials supplier like my client, which simply provides a raw material to a manufacturer and makes numerous bulk chemicals, bulk commodities, a number of engineering resins, supplies them to hundreds of companies that make thousands of products around the world. And we cannot be held liable under the raw materials supplier defense for problems that may occur ultimately in the product that the manufacturer makes. Does it matter whether you're selling it for this purpose? Well, we're selling it for any one of a number of purposes. It doesn't matter. I mean, ultimately, and I'm going to be honest. It is true that we, in fact, sold it into the plumbing market. And it is used in the plumbing market. And it's used successfully in the plumbing market. Again, there's evidence in the record below, uncontested below, now objected to at this level, at the appellate level, as being brand new. But it's not brand new. It's in the record below that Celcon is used in plumbing fittings successfully. It's just not this particular company. It's not this particular design. There's also very clear evidence, and it's the Amstot case from the Texas Supreme Court, which appellants make much of in their papers. But the Amstot case makes it perfectly clear that Celonese had nothing to do with the material selection, with the design of this plumbing system. All we did was supply raw material to them. Did we visit them? Yes. Did we talk to them about the material properties of our material? Yes, we did. But we also cited a lot of cases that hold that that doesn't defeat the raw material supplier defense. If it did, no raw material supplier would ever be subject to that defense. I mean, you can't sell something without having some contact with your customer. There's also an argument that somehow or another our material isn't right for the raw material supplier defense because it's inherently unsafe. But that, I think, is missing what the inherently unsafe body of law is about. And that is, is it inherently unsafe for any purpose? That's not what we have here. Celcon is used, again, successfully in lots of applications, including plumbing applications around the world. And that it may or may not have had a problem in this particular application is a different question and doesn't negate the raw material supplier defense. And if there are no further questions, thanks. Thank you very much, counsel. Thank you. If the Court pleases, on page, it's right before 60. Better get to the microphone there. I'm sorry. It's recording. Yes, thank you. On page 004037, it says, sub 2, that evening after returning from work, I removed additional pieces of drywall from the wall in our main bathroom, discovering that the leak originated from couplings. Couplings. In the water supply system located in the west wall between the shower and the toilet. I attempted to remove it as much as I could and found such and such a place. Okay. Thank you very much. Very briefly. Why don't you go to the microphone and we'll give you a minute. Go ahead. Thank you. As far as all State and as far as the specific pleadings, Tucson is a notice pleading State in what we did and we did that. With respect to the bad faith, the, even if you take away anything that Mr. or Mrs. Lim said, or Mrs. Lim said, the fact of the matter is, all State never did the testing that it should have done, that it was required to do, to see whether or not there was a sudden removal of water which would have sent an investigator in. Yeah. And he said we should do a pressure test. They never did a pressure test. So we were left at that point with, they were asked to do something. They didn't do it themselves. And they're standing there with their hands behind their back and they're saying, well, we're not responsible. But they did a bad faith action. And the specific part of this whole thing that comes to it is people lost their homes and got very sick as a result of this. This is not something that is a slight, small little thing. This is something that is very, very substantial. And therefore, on that basis, we believe that certainly there is bad faith that was done by all States because they never investigated to show what was going on with respect to the plumbing, even when they went out. They documented that there was lots of mold. They documented that there were problems. But they never did the testing which they were required to do and which their representative who went out there said, you better do a pressure test. And they never did that. With respect to the Celanese, there's lots of evidence that the fittings were from the home. There was, number one, even the Armstead case itself says Celanese was having lots of problems and they were having it because of Celcon. But you can't have a ‑‑ are you claiming res judicata or a claim for inclusion or something? No. But, I mean, it is a form of evidence. In other words, they're saying you should have had chemical testing. We don't need to have chemical testing. We have all the direct and circumstantial evidence which would create reasonable questions of fact for a jury so that the summary judgment should have been denied. Thank you very much. Thank you. Thank you, counsel. The case of Tang v. Shell Chemical Company is submitted and we are in recess until tomorrow morning. Thank you.
judges: Thompson, Berzon, Smith